361 So.2d 918 (1978)
Gwen Delaneuville, wife of/and Gene DELANEUVILLE
v.
Dr. Sidney BULLARD, Dr. D. Thomas O'Quinn, Dr. Robert Sharp, Dr. W. K. Gauthier and Metairie Hospital.
No. 9147.
Court of Appeal of Louisiana, Fourth Circuit.
June 30, 1978.
Rehearing Denied September 12, 1978.
Writ Refused October 26, 1978.
*919 Daniel E. Becnel, Jr., Robert R. Faucheux, Jr., C. William Bradley, Jr. and Barry J. Landry, Reserve, for plaintiffs-appellants.
John J. Weigel, Jones, Walker, Waechter, Poitevent, Carrere & Denegre, New Orleans, for Dr. W. Kohlmann Gauthier, defendant-appellee.
H. Martin Hunley, Jr., Lemle, Kelleher, Kohlmeyer & Matthews, New Orleans, for Dr. Sidney Bullard, and Metairie Hospital, defendants-appellees.
Before LEMMON, BOUTALL and BEER, JJ.
BOUTALL, Judge.
This appeal involves a claim for damages by plaintiff Gwen Delaneuville against Dr. Sidney Bullard, Dr. William K. Gauthier and Metairie Hospital for malpractice, alleging their negligence in failure to properly inform plaintiff and in performance of improper surgical procedures which resulted in the necessity of further surgical procedures to correct, and which caused considerable pain and suffering. The jury rendered verdict in favor of defendants, dismissing plaintiff's suit, and she appeals.
Mrs. Delaneuville had her uncle, Dr. Sidney Bullard, as her family physician for many years, and he had delivered three children for her, the first normally and the later two by Caesarian section. It was routinely discovered on a Pap smear test that she faced the possibility of cancer, and after consultation with Dr. Bullard it was decided that he would perform a hysterectomy. It is this operation which forms the basis of most of the claims herein.
On October 9, 1973 at Metairie Hospital, Dr. Bullard, assisted by Dr. D. Thomas O'Quinn, performed a hysterectomy in which he removed the uterus, tubes and ovaries. The operation was apparently successful and plaintiff was discharged from the hospital. Two weeks later, plaintiff noticed a passage of urine vaginally and again consulted Dr. Bullard. His subsequent examinations failed to discover the cause, and he referred her to Dr. Robert Sharp, a specialist in urology. Dr. Sharp was able to identify a vesico-vaginal fistula, an abnormal passageway or hole between the bladder and the vagina, permitting urine to flow through. Dr. Bullard then rehospitalized her at Metairie Hospital for corrective surgery of the fistula. On November 14, 1973, surgical repair was attempted by the team of Dr. Bullard, Dr. Sharp and Dr. William K. Gauthier. The repair was unsuccessful, and she continued to leak urine, necessitating a further operation by Dr. Fred Brumfield who successfully repaired the fistula. *920 and the negligent attempt to repair the fistula led to the third operation.
Further claims arose due to the onset of severe abdominal pain more than a year later on August 29, 1975. Mrs. Delaneuville again consulted Dr. Brumfield, and following examination she was referred to a surgeon, Dr. James Dowling, to perform exploratory abdominal surgery. This surgery revealed a cyst in the pelvic area which contained ovarian tissue and a slight amount of foreign material, suggestive of cotton sutures. It is contended that this piece of ovary which caused that condition was negligently left in Mrs. Delaneuville's body in the course of the hysterectomy operation in which both entire ovaries were to have been removed.
The first issue for consideration is whether Mrs. Delaneuville was adequately informed of the nature of the two operations by Dr. Bullard, and of the name and qualifications of the surgeons who were to perform them. There is no serious contention as to the hysterectomy operation, and this issue mainly centers around the attempted fistula repair in November, 1973.
The plaintiff contends that Dr. Bullard did not tell her who was to perform the actual surgery, and that he only informed her that the repair attempt would be made vaginally, a less serious procedure than finally resulted. She relates that she was simply given a blank form of authorization for the procedure, which she signed, trusting entirely on her faith in Dr. Bullard to do what was right. As opposed to this, Dr. Bullard testified that he had discussed the procedures involved with plaintiff, and that he informed her of the doctors who were to operate. He refers to the medical authorization form filed in evidence, completely filled out, with his name stating that surgery will be under his direction and granting him and his associates or assistants authority to perform such further procedures as may be necessary. Additionally he refers to the hospital notes which contain a statement by him as to the surgeons involved and the procedures to be employed, all having been explained to the patient.
This issue is obviously concerned with the credibility of the witnesses, and it is apparent that the jury must have resolved that issue in favor of the defendant. There is sufficient evidence to support such a finding, and based upon the rule of proper allocation of trial and appellate functions announced in Canter v. Koehring Company, 283 So.2d 716, 724 (La.1973), we cannot disturb such a finding absent manifest error.
However, the main thrust of plaintiff's suit is the negligent performance of the hysterectomy operation and the attempted fistula repair which followed. Expert medical testimony was produced to show that medical malpractice or negligence occurred during the course of a hysterectomy operation which resulted in a damaged bladder and the formation of the vesico-vaginal fistula, showed rough handling of the internal organs such that massive adhesions formed making further surgical procedures difficult or impossible, and left ovarian tissue where it was supposed to have been entirely removed. There is abundant medical testimony in this case disputing whether any one particular of these three items is caused by negligence, by known and accepted risks, or by other causes. Plaintiff's expert himself recites the possibility of non-negligent conditions which might cause any one of the three, but asserts that the presence of all three can lead only to one conclusion, that of incompetent and negligent performance. There is no dispute over the fact that further operations were necessary to repair the fistula, and that an operation was necessary to relieve plaintiff's distress caused by the ovarian tissue. The dispute centers around the cause and origin of each of these conditions.
The general rule is that it is the duty of a physician to exercise a degree of skill ordinarily employed under similar circumstances by the members of his profession in good standing in the same community or locality and to use reasonable care and diligence along with his best judgment in the application of his skill to the case.
*921 Meyer v. St. Paul Mercury Indemnity Company, 225 La. 618, 73 So.2d 781 (La.1954); Uter v. Bone & Joint Clinic, 249 La. 851, 192 So.2d 100 (La.1966). The physician is ordinarily not a guarantor of a perfect result each time, and it is recognized that despite the best skill and judgment of competent practitioners, unfortunate results may occur.
In considering the development of this lady's condition after the hysterectomy operation, we note that at trial time there was no way of positively determining the cause of the fistula. The evidence preponderates that it occurred in this case as a result of the hysterectomy, but the precise cause cannot be pinpointed. However, all of the surgeons who testified stated that the development of a fistula does not indicate negligent performance, per se. There is some difference of opinion amongst the doctors as to what may have caused the fistula in this case, but there seems to be a general consensus that with a patient of this type, who had two prior surgeries, Caesarian sections, prior to the hysterectomy, that considerable adhesions in the area would develop, making the handling of the bladder more difficult, and that such handling could damage blood vessels causing degenerative changes in the tissues and resulting in a fistula. Dr. Bullard testified in detail as to his procedures during the surgery and gives no indication of negligent handling of the bladder or of causing a suture wound. Under this state of the evidence, it is possible to reach a different conclusion from the jury which found no negligence, but the jury concluded there was no negligence. There is sufficient evidence to support that conclusion, and we find no manifest error.
Continuing with the fistula, it is noted that the operation to repair was not a success. There is a dispute as to whether this operation was prematurely performed, thus preventing good results. The evidence indicates that it is a matter of judgment amongst physicians as to whether a fistula repair should be attempted shortly following the development, or whether a period of six or more months should be allowed to pass before attempting repair. The basic purpose for this delay is to permit the tissue in the area to become healthy and free from any infection or swelling in order to achieve maximum success. It is recognized that for some reason or other, not due to negligence, successful repairs are not always achieved. As we appreciate the testimony, the main insurance of success is the condition of the tissues surrounding the fistula, and in this case the testimony is, by those who viewed it, that the tissue was not swollen, irritated, or infected, but was suitable for operation. At the same time, it should be noted that although this repair was to be primarily attempted by a vaginal procedure; because of complications which arose it had to be performed by entering the abdominal area. The actual repair was made by Dr. Sharp, whose specialty of urology encompasses the bladder, and he satisfied himself that the repair was properly made. There is no evidence whatever of any negligence on the part of Dr. Sharp, and plaintiff's expert could state none. Indeed, at the conclusion of trial, plaintiff voluntarily dismissed suit against Dr. Sharp.
Further contentions were raised that Doctors Bullard and Gauthier failed to order an enema of the patient for this operation and failed to order a cross-matching of blood in anticipation of the surgery which did finally occur. The medical testimony demonstrates that this is a matter of judgment of the physician and not required under the standards of proper care in the community. Most important, however, is that neither of these items played any part in the performance or completion of the operation and are irrelevant. Considering all of the evidence concerning the attempted fistula repair, we cannot say that the jury was manifestly erroneous in its conclusions.
The last issue is the fact that a small piece of ovary was found in the patient's body, and that that caused the condition which brought on the operation by Dr. Dowling in September of 1975. The pathologist's reports submitted upon the tissue *922 removed by Dr. Dowling show that it was live ovarian tissue. This of course raises the inference that in the hysterectomy operation, Dr. Bullard did not remove the entire ovary as he intended, and as stated in the pathology report from that operation. Of significance here is the location of the specimen removed. Dr. Dowling testified that in his operation he found a small cyst near the true pelvic brim and excised the ovarian tissue which was imbedded there. The preponderance of medical evidence is that this is not the normal place where ovarian tissue would be found in the patient's body, and that this tissue was probably ectopic, or aberrant tissue, that is, tissue which is sometimes found in the body at a place removed from its normal site. Accordingly, we conclude that the jury did not manifestly err in its determination that there was no showing of negligence by the presence of this tissue.
In summation, our examination of the record shows sufficient evidence to support the findings of the jury, and we find no manifest error in its verdict. Accordingly, the judgment appealed from is affirmed.
AFFIRMED.
LEMMON, J., dissents and assigns reasons.
LEMMON, Judge, dissents.
I disagree with the dismissal of the claim for damages resulting from malpractice in the surgical repair of the fistula.
The crucial issue on this point is causation. The record leaves no doubt that the professional conduct fell below acceptable standards; the question is whether it is more probable than not that successful repair of the fistula would have been accomplished in one simple surgical procedure by performance according to acceptable standards.
On November 12, 1973 Dr. Sharp (the urologist) located the fistula vaginally and by cystoscope in an office examination. He reported this finding by telephone to Dr. Bullard (the family practitioner) and referred the patient back to him. Location of the fistula was the only purpose of Dr. Sharp's examination, and he had nothing to do with the decision to perform surgery.
The same day Dr. Bullard decided on surgery to repair the fistula, a procedure that was admittedly beyond Dr. Bullard's competence. Dr. Gauthier (the surgeon), who had never heard of plaintiff until after she was admitted to the hospital on November 13, was called in to perform the surgery. Dr. Gauthier did not examine plaintiff or attempt to identify the fistula. He did not attempt to determine (or to find out if someone else had determined) that the tissue in the fistula area was ready for repair only 36 days after the hysterectomy and three weeks after the fistula had developed. He did, however, call in Dr. Sharp to assist, but it was contemplated that Dr. Sharp would only cystoscope the patient and pass a catheter into the vagina. Although Dr. Gauthier had not performed this operation in 35 years, he proceeded to operate the next morning without any further preparation or examination.
Dr. Gauthier attempted to locate the fistula vaginally, but could not do so. He had Dr. Sharp locate the fistula with a cystoscope and attempt to insert a catheter from the bladder into the vagina, but that attempt also was unsuccessful. Dr. Gauthier then decided to open the abdomen (although he had not ordered the preparation normally done when abdominal surgery is anticipated) and to attempt the repair from above. However, when problems with adhesions caused by prior surgery and with bleeding made it difficult to separate the bladder from the vagina, Dr. Sharp agreed to open the bladder from the dome and repair the fistula transversically. The repair by Dr. Sharp failed to hold.
In December, 1973 plaintiff was referred to Dr. Brumfield (the gynecologist), who advised a second surgery, after a period of treatment necessary to restore the tissue in the area to a condition appropriate for achieving a successful repair. He treated her for several months and then repaired the fistula vaginally on April 26, 1974 with no problems.
*923 Failure to achieve desired medical results is not in itself indicative of malpractice. However, failure to insure that the patient is in a condition most suitable for the probability of satisfactory results before proceeding with elective surgery is malpractice. The overall circumstances of this case establish it is more probable than not that proper and adequate preparation and examination prior to the hastily scheduled surgery would have prevented the need for the secondary abdominal approach in the first surgery and for any second surgery.[1]
I would hold Drs. Gauthier and Bullard liable for plaintiff's damages resulting therefrom.
NOTES
[1] There is a problem of proof as to the condition of the tissue in the fistula area, the only direct evidence being available to the defendants. However, the pre-operative preparation as a whole was so poor as to cast doubt on all preparatory procedures and to tip the preponderance in favor of the conclusion that bad results were caused by bad preparation.